# Farmers Deposit National Bank of Pittsburg *v.* Western Pennsylvania Fuel Company, Appellant.

*Landlord and tenant—Impeachment of landlord's title—Banks and banking —National bank.*

A tenant in an office building owned and in part occupied by a national bank cannot set up as a defense in an action for rent that the bank had no power under its charter to erect an office building and rent out offices. The rule that a lessee cannot impeach the title of his lessor for any cause except fraud, applies in such a case.

The question of the power of a national bank to erect such a building is a matter for the federal government alone.

Argued March 14, 1906.   Appeal, No. 24, Oct. T., 1906, by defendant, from judgment of Superior Ct., April T., 1905, No. 183, affirming order of C. P. No. 3, Allegheny Co., May T., 1904, No. 487, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Farmers Deposit National Bank of Pittsburg v. Western Pennnsylvania Fuel Company.   Before MITCHELL, C. J., FELL, MESTREZAT, POT-TER and ELKIN, JJ.   Affirmed.

Appeal from Superior Court.    See 29 Pa. Superior Ct. 69.

*Error assigned* was judgment of the Superior Court.

*George C. Bradshaw,* for appellant.

*Samuel McClay,* with him *Reed, Smith, Shaw & Beal,* for appellee.

OPINION BY MR. JUSTICE POTTER, April 30, 1906 .

The plaintiff in this case brought an action of assumpsit to recover rent, claimed to be due by the defendant for offices in its building known as the Farmers Bank Building, Pittsburg. Defendant in its affidavit of defense, admitted the contract and the nonpayment of the rent claimed.    But it alleged, that it had abandoned the premises and surrendered them to plaintiff before the rent accrued, and that plaintiff had refused to accept the surrender.    It further alleged as a defense that plaintiff was a corporation organized and chartered under the national banking act, and as such had no power to purchase, lease, rent, deal in or hold real estate, except such as was necessary for its immediate accommodation in the transacting of its business, or such as it might obtain as security for or in satisfaction of previously contracted debts ; that the building in which the offices leased to defendant were situated was not owned or held by plaintiff for any of the purposes allowed by the act of congress, but for an entirely different and foreign purpose ; that said building was twenty-two stories in height and only one-fourth of the first floor was oc cupied by the plaintiff as a place for transacting its business ; that the remainder of the first floor is occupied by a large entrance to the office building, a state bank, a jewelry store, and for other purposes, and all of the rooms in the twenty-one stories above the first floor are leased to corporations and individuals for purposes entirely unconnected with plaintiff's banking business ; that the building containing the leased premises was erected and held by plaintiff in violation of the laws of the United States, at enormous expense, out of its capital or surplus and was wholly unnecessary for carrying on its banking business, but was erected for another and different purpose,

the investment of its funds in a manner forbidden by law; that, therefore, plaintiff had no power to enter into the lease sued on and defendant was not bound by any of the terms and covenants contained therein.

The court of common pleas made absolute a rule for judgment against defendant for want of a sufficient affidavit of defense, and the Superior Court affirmed this judgment.

In the opinion of the latter court, the question of the power of a national bank to invest its funds in the erection of a large office building, in part of which its own offices are located, was not passed upon. The affirmance was based upon the ground that "a lessee cannot impeach the title of his lessor for any cause except fraud."

We think this ground was well taken, and the decision of the case might well rest upon that point. "The law is well settled that where a person is in possession of property, and leases it to another and puts him in possession, the tenant cannot object to the title of his lessor, who can recover for rent, or for use and occupation if no rent was agreed upon:" Gleim v. Rise, 6 Watts, 44, (45).

And the same principle is thus stated in Trickett on Landlord & Tenant in Penna. sec. 756. "By accepting a lease and the possession of the premises in pursuance of it, the tenant precludes himself from effectively refusing to pay the rent on account of the defects of the title of the lessor. He may be compelled to pay the rent, despite such defects, if any, and therefore proof of such defects is irrelevant and inadmissible in actions of assumpsit for the rent." The rule that a tenant cannot impeach or question the title of his landlord, except for fraud, applies also, when the tenant has vacated the premises before the rent sued for has accrued: Howard v. Murphy, 23 Pa. 173.

In that case Justice WOODWARD said (p. 175): "The plaintiffs in error are to be considered as occupying under the lease with Murphy's (the landlord's) agent, for if they did not remain in the actual possession of the premises, they might have done so. They were not evicted or disturbed in their possession by any title paramount to Murphy's, and if they turned themselves out, it was their own fault and no reason for refusing the stipulated rent. A tenant cannot be com-

pelled to occupy the premises he leases. If he chooses that they shall stand vacant, his will is law to himself, but let him not imagine that his caprice, or change of interest, will excuse his payment of the rent." This statement applies closely to the facts of the present case.

But it is urged in the argument for appellant, that the contract of leasing was ultra vires, and therefore void, for the reason that the bank had no power to invest its funds in the erection of an immense office building, vastly greater than anything required for its own use, in carrying on the business of banking. But if the bank has exceeded its powers in this respect, we think it is for the government to call it to account, and private parties cannot directly or indirectly usurp this function of the government. With regard to the infraction of a similar provision of the law, Justice WHITE says, in Schuyler National Bank v. Gadsden, 191 U. S. 451, " it is no longer open to controversy, that the provisions of the statutes of the United States forbidding the taking of real estate security by a National Bank, for a debt coincidently contracted, do not operate to make the security void, and thus enable the individual who has contracted with the bank to defeat recovery, but simply subjects the bank to be called to account by the government for exceeding its powers." Substantially the question now under consideration, was passed upon in Brown v. Schleier, 118 Fed. Repr. 981. Judge THAYER there said (p. 983) : " It is urged, in substance, that the lease was ultra vires the bank, because it undertook, in violation of sec. 5137 of the revised statutes, to erect a building on the demised premises, which it did not contemplate using 'for its immediate accommodation in the transaction of its business,' but did intend to rent in part to third parties."

After pointing out that a national bank has the right to lease as well as purchase property with a view to securing an eligible location, the opinion goes on " Nor do we perceive any reason why a national bank, when it purchases or leases property for the erection of a banking house, should be compelled to use it exclusively for banking purposes. If the land which it purchases or leases for the accommodation of its business is very valuable, it should be accorded the same rights that belong to other landowners, of improving it in the way that will yield the

largest income, lessening its own rent and rendering that part of its funds which are invested in realty most productive. There is nothing, we think, in the national bank act, when rightly construed, which precludes national banks, so long as they act in good faith, from pursuing the policy above outlined."

The reasoning in this case, commends itself to our judgment. But in any event it is certainly safer to leave the matter of any alleged violation of the national banking act, in dealing with real estate, to be determined by the government. " Power is usually expressly given (to banks) to own realty sufficient for a place of business. . . . The effect of exceeding its powers, and buying or taking land beyond its authority, is usually in this country no more than the risk of forfeiture of franchise at suit of the sovereign. The title is good : " Morse on Banks & Banking (4th ed.), sec. 55.

It appears clearly from the decisions of the supreme court of the United States in such cases as National Bank v. Matthews, 98 U. S. 621, and National Bank v. Whitney, 103 U. S. 99, that violation of the prohibitory clauses of the banking act makes the association liable only to such penalties as may be imposed in proceedings instituted against the bank, by the government.

The assignments of error are dismissed, and the judgment of the Superior Court is affirmed.