## Blairsville National Bank *v.* Crabbs, Appellant.

*Banks and banking—Checks—Payment—Lien—Commercial paper—National banks—Act of May 16, 1901, P. L. 194, sec. 27.*

1. In a suit by a national bank against the maker of a check where the plaintiff avers in its statement of claim that it is the "holder of said check for value paid in good faith and without notice," and the affidavit of defense does not deny this but merely avers that the defendant gave the check in suit to the payee under the representation that the latter was going to a particular city to buy cattle, and that the defendant found out that he did not go, and thereupon stopped payment of the check, and it is admitted that the plaintiff bank had advanced to the payee the full amount of the check, the bank becomes entitled to a lien upon the paper for the full amount thus advanced, and under the Act of May 16, 1901, P. L. 194, sec. 27, must be deemed to be a holder for value to the extent of the lien.

2. A national bank may lawfully acquire title to commercial paper, although it may be unable to show that it has made a profit upon the purchase of the paper.

Argued April 28, 1910. Appeal, No. 166, April T., 1910, by defendant, from judgment of C. P. No. 4, Allegheny Co., Fourth T., 1907, No. 929, on verdict for plaintiff in case of First National Bank of Blairsville v. A. A. Crabbs, doing business as The Locust Grove Farm.

Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Assumpsit against the maker of a check.   Before COHEN, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $228.42.   Defendant appealed.

*Error assigned* amongst others was in giving binding instructions for plaintiff.

*S. R. McClure,* for appellant.—The bank was under no obligation to pay the check; paying checks drawn on other banks is not a part of its business as collecting them is: Tibby Bros. Glass Co. v. Bank, 220 Pa. 1.

It is a well established principle that the right of a drawer of a check to stop payment only ceases with actual payment: German National Bank v. Farmers' Deposit National Bank, 118 Pa. 294.

Banks receiving checks for collection are not held to be the owners of the checks, but the ownership of the checks remains with the person who deposited them for collection: Hazlett v. Commercial Nat. Bank, 132 Pa. 118; Rapp v. National Security Bank, 136 Pa. 426; Union Safe Deposit Bank v. Strauch, 20 Pa. Superior Ct. 196.

As commercial paper the check in question was neither purchased nor discounted by the appellee bank and there rested upon the bank no obligation to deal with this check as if it had been the drawee.

The light in which plaintiff presents the transaction in its own behalf as a national bank, puts it before us as an ultra vires act and furthermore, an act which under the decisions, the defendant has the right to question: First National Bank of Rochester v. Pierson, 24 Minn. 140; Lazear v. Nat. Union Bank, 52 Md. 78; First Nat. Bank v. Burkham, 32 Mich. 328.

*U. G. Vogan,* for appellee.—The holder of commercial paper is presumed to be the holder for value unless it be shown to the contrary, and the burden of showing that the holder of a check is not a holder for value paid in good faith rests upon him who asserts it: Penn Bank v. Frankish, 91 Pa. 339; Garden City Nat. Bank v. Filter, 155 Pa. 210; Farmer's Deposit Nat. Bank v. Western Penna. Fuel Co., 215 Pa. 115; Taft v. Nat. Bank, 172 Mass. 363.

OPINION BY PORTER, J., November 21, 1910:

Under the rules of the court below the material averments of plaintiff's statement not denied by the affidavit of defense were, upon the trial of the cause, taken to be admitted, and the application of that rule established conclusively the following facts. The defendant, on July 27, 1907, made and delivered to John Howith his check for the sum of $200, drawn upon the Mercantile Trust Company, Pittsburg, and payable to the order of said Howith. Howith, the same day, indorsed and delivered the check to the plaintiff bank, and the latter paid to Howith the full amount of the check in cash. The check was in the regular course of business duly presented by the agent of the plaintiff to the Mercantile Trust Company, upon which it was drawn, and thereupon payment was refused, for the reason that payment had been stopped by the defendant, and thereupon the check was protested for nonpayment and due notice given to the defendant. The only evidence offered by the defendant to meet the prima facie case thus shown by the plaintiff, tended to establish that he had made and delivered the check to Howith upon the representation that the latter was going to New York to buy cattle, and the defendant "found out that he didn't go to New York; so I went down to the bank and found that two of the checks he had gotten cashed and so I stopped payment on the last one." The court below gave binding instructions in favor of the plaintiff and the defendant appeals.

The defendant did not in his testimony undertake to

say that he did not in fact owe Howith the money for which the check was given. His testimony was to the effect only that he gave the check to Howith under the representation that the latter was going to New York to buy cattle, that the defendant found out that he did not go to New York and thereupon stopped payment of the check. The defendant did not testify that Howith was to buy the cattle for the defendant, and the only inference which can fairly be drawn from the testimony is that Howith was to buy the cattle upon his own account. Even if it be assumed, however, that the defendant was in no manner indebted to Howith and that the check was merely given as an accommodation to the latter, the utmost that can be said in favor of the defendant is that the check was procured by fraud. The only effect of this assumption would be to place upon the plaintiff the burden of showing that it was a holder of the check for value paid in good faith and without notice of the fraud. This burden the plaintiff had already discharged, for it had averred in its statement "That the said plaintiff is now a holder of said check for value paid in good faith and without notice," which averment the affidavit of defense failed to deny, and, under the rules of the court below it must be taken as a fact admitted. There can be no profit in discussing whether, under the law, the plaintiff had acquired title to the check, as owner, or was merely the agent of Howith for the purpose of collection. The fact being admitted that the plaintiff had advanced to Howith the full amount of the check, it thus became entitled to a lien upon the paper for the full amount thus advanced, and under the Act of May 16, 1901, P. L. 194, sec. 27, must be deemed to be a holder for value to the extent of the lien: National Bank of Phœnixville v. Bonsor, 38 Pa. Superior Ct. 275.

The contention of the learned counsel for the appellant that if the plaintiff, a national bank, acquired title to the check, as owner, by purchasing it at its full face value, the act was ultra vires and the bank cannot maintain an action on the check, is not well founded. The purchase of

negotiable paper by a national bank is as clearly within its legitimate powers as the collection of such paper by the bank as an agent: Taft v. Quinsigamond National Bank, 172 Mass. 363. If the contention of the appellant were sound the whole modern system pursued in the settlement of balances between distant commercial communities, having business relations with each other, would have to be revised. A check which is payable to the order of a person named therein as payee is for all essential purposes a negotiable inland bill, or draft, payable at sight. Through commercial paper of this character financial transactions between banks and individuals in different cities of the world are, to a large extent, carried on. Many banks in interior cities constantly carry a balance in some bank in the city of New York. When a bank or an individual desires to discharge an obligation payable in New York, it or he goes to a bank which has funds on deposit in that city and buys exchange, a draft or check payable to order, which after proper indorsement is sent to the party in New York, thus avoiding the inconvenience of frequent shipments of currency. If the contention of the appellant is correct, a national bank, when it paid par for such a draft, would acquire no title to the paper. There can be no reasonable ground for holding that a national bank cannot lawfully acquire title to commercial paper merely because it is unable to show that it has made a profit upon the transaction. But if the bank has exceeded its powers in this respect, it is for the government to call it to account, and private parties cannot directly or indirectly usurp this function of the government: Farmer's Deposit National Bank v. Western Pennsylvania Fuel Company, 215 Pa. 115.

The judgment is affirmed.