VOLUNTEER STATE LIFE INS. CO. *v.* WM. F. DUNBAR,
STATE INSURANCE COMMISSIONER.

*(Knoxville.* September Term, 1915.)

1. INSURANCE. Life companies. Right to erect building.
Shannon's Code, sec. 2272, authorizes life companies to purchase
and hold any real estate necessary for the transaction of the
corporate business. Acts 1907, ch. 458, entitled an act to
regulate the investment of the funds of domestic life companies,
provides in section 3 that such companies may acquire land
such as shall be requisite for convenient accommodation in the
transaction of business, but that all other lands shall be dis-
posed of. *Held,* that the directors of such companies should
be given considerable latitude in determining the character of
the building which shall be erected for a corporate home, and
they may erect a large office building worth more than the
combined capital stock and surplus of the company, not all
of which is then necessary for the needs of the company for
that will tend, where the land is very valuable, to reduce their
rents. (*Post, pp.* 334-341.)

Acts cited and construed: Acts 1907, ch. 458; Acts 1881, ch.
126.

Cases cited and approved: Fourth Nat. Bank v. Stahlman, 132
Tenn., 367; Brown v. Schlier, 118 Fed., 981; People v. Pullman
Palace Car Co., 175 Ill., 125; Rector v. Hartford Deposit Co.,
190 Ill., 380; Simpson v. Westminster Palace Hotel Co., 8 Ho.
Lords Cas., 712; Farmers', etc., Bank v. Western, etc., Co., 215
Pa., 115; Barrow v. Nashville, etc., Turnpike Co., 28 Tenn.,
304; Searight v. Payne, 1 Tenn. Ch., 186; Reynolds v. Craw-
fordsville First Nat. Bank, 112 U. S., 405.

Code cited and construed: Sec. 2272 (S.).

2. **INSURANCE.** Life companies. Power of insurance commissioner.

While Shannon's Code, sec. 5165 *et seq.*, authorizes state officials to call in question before the courts any excess of corporate action, and Acts 1907, ch. 458, sec. 3, subsec. 4, declares that life companies shall dispose of land not necessary for the accommodation of their business within two years and shall not hold property for a longer period without a certificate from the insurance commissioner extending time for the sale of such property, the consent of the insurance commissioner to the acquisition of land and the erection of a building for the home office is not necessary. (*Post, pp.* 341, 342.)

Cases cited and approved: State ex rel. v. Turnpike Co., 3 Tenn. Ch., 163; State ex rel. v. Turnpike Co., 112 Tenn., 617; Insurance Co. v. Craig, 106 Tenn., 624.

Code cited and construed: Sec. 5165 (S.).

---

FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton County.—W. B. GARVIN, Chancellor.

FRANK M. THOMPSON, Attorney-General, for appellant.

BURKETT MILLER and W. B. MILLER, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The Volunteer State Life Insurance Company is a body corporate under the laws of this State, with *situs* at Chattanooga. Its officials, with the unanimous con-

currence of the stockholders and directors, formulated a plan for the purcahse of a lot at the corner of two of the leading streets of that city, and for the erection thereon of a home office building. Out of abundance of caution the company consulted the appellant, the insurance commissioner of this State, with a view to obtaining his consent to the execution of the plan. That official was of opinion that the power of the company to make the investment was to be determined and controlled by Acts 1907, chapter 458, and that under the terms of that act a domestic life insurance company may only acquire and hold such real estate as shall be requisite for convenient accommodation of the company in the transaction of its business; and, further, that as the plan called for an investment in the lot and the structure of a sum much in excess of the capital stock and surplus of the company, and of the further fact that the building proposed, ten stories high, would exceed the needs of the company for its accommodation, presently and for several years to come, the execution of the plan was not warranted by the law. His approval or assent was therefore withheld, so far as it may have been requisite.

Both of the parties were, however, desirous of having the act above referred to construed, and of having an opinion of the court respecting the right of the company to proceed as having power under its charter or under said act to make the proposed investment, and also in respect of the powers of the insurance commissioner in the premises. Accordingly, an "agreed case"

was made up and submitted to the chancery court of
Hamilton county in order to such a determination. The
chancellor's opinion and decree were favorable to the
company. As a part of the agreed case, four inquiries
were submitted for the court to answer, but we think
they may be reduced to two:

(1) Has complainant company power, under its
charter and the statutes of the State, to acquire unim-
proved realty and erect thereon a home office building
which would be in excess of its present needs or its
needs in the immediate future; and at a total cost in
excess of its capital stock and surplus?

(2) If so, is it necessary, as by way of condition,
for the company to procure the approval or assent of
the insurance commissioner of the State to proceed
with the execution of such power?

By its charter the company has power and authority
to purchase and hold any real estate necessary for the
transaction of the corporate business. Code (Shan-
non), sec. 2272; Acts 1881, ch. 126.

Acts 1907, chapter 458, is entitled "An act to reg-
ulate the investment of the funds of domestic life in-
surance companies," and its first section provides that
no such company shall subscribe to or participate in
any underwriting of the purchase or sale of securities
or property or to enter into any such purchase or sale
on account of said company jointly with another; and
that "the disposition of its property shall be at all
times within the control of its board of directors."

"No investment or loan, except policy loans, shall be made by any such life insurance company, unless the same shall first have been authorized by the board of trustees or by a committee thereof charged with the duty of supervising such investment or loan."

The act then provides further:

"Sec. 2. Be it further enacted, that domestic life insurance companies may invest their funds and accumulations in bonds of the United States, or of this State, or of any other State, or of any county of this or any other State, or of any incorporated city or town of this or any other State, or in the mortgage bonds of any dividend-paying railway or street railway company duly incorporated and organized under the authority of this State or any other State or in other good and solvent securities subject to the approval of the insurance commissioner of this State; and such companies may loan their funds upon improved, unincumbered real property in any State, not exceeding, however, fifty per centum of the value of such property, or upon security or promissory notes amply secured by pledge of any bonds or other securities in which such companies are hereby authorized to invest their funds, or upon the security of their own policies: Provided, the loan upon any policy shall not exceed the reserve value thereof.

"Sec. 3. Be it further enacted, that domestic life insurance companies may acquire, hold, and convey real property only for the following purposes and in the following manner:

"1.  Such as shall be requisite for convenient accommodation in the transaction of business.

"2.  Such as shall have been mortgaged to it in good faith by way of security for loans previously contracted or for moneys due.

"3.  Such as shall have been conveyed to it in satisfaction of debts previously contracted in the course of its dealings.

"4.  Such as shall have been purchased at sales on judgments, decrees, or mortgages obtained or made for such debts.

"All such real property specified in subsections 2, 3, and 4 of this section, which shall not be necessary for its accommodation in the convenient transaction of its business shall be sold and disposed of within two years after the company shall have acquired title to the same, or within two years after the same shall have ceased to be necessary for the accommodation of its business; and it shall not hold such property for a longer period unless it shall procure a certificate from the Insurance Commissioner authorizing an extension of time for the sale of such property. The insurance commissioner is hereby authorized to issue such a certificate extending the time for the sale of such property if in his judgment it appears that the interest of the company will suffer materially by a forced sale of such property.

"Sec. 4.  Be it further enacted, that no domestic life insurance company shall invest or loan its funds in any manner except as provided in this act."

In response to the first query: This court had occasion, in the recent case of *Fourth National Bank* v. *Stahlman,* 132 Tenn., 367, 178 S. W., 942, to discuss the power of a national bank to acquire a stockholding interest in a corporation projected to erect and own a skyscraper building, the first floor only of which was to be occupied by it as banking quarters. It was held that such acquisition was not *ultra vires.*

The case of *Brown* v. *Schlier,* 118 Fed., 981, 55 C. C. A., 475, was there cited and followed. In that case a national bank erected, at a cost in excess of the capital stock, a four-story building, intending to utilize the upper stories as offices to be rented to others by the bank.

The federal statute governing national banks is stricter than is the act of 1907, above quoted, since it provides that a national bank shall have power to purchase and hold such real estate as is necessary for its "immediate" accommodation in the transaction of its business.

The circuit court of appeals, however, said:

"Nor do we perceive any reason why a national bank, when it purchases or leases property for the erection of a banking house, should be compelled to use it exclusively for banking purposes. If the land which it purchases or leases for the accommodation of its business is very valuable, it should be accorded the same rights that belong to other landowners of improving it in a way that will yield the largest income, lessen its own rent, and render that part of its funds

133 Tenn. 22

which are invested in realty most productive. There is nothing, we think in the National Bank Act, when rightly construed, which precludes national banks, so long as they act in good faith, from pursuing the policy above outlined.''

In *People* v. *Pullman Palace Car Co.,* 175 Ill., 125, 51 N. E., 664, 64 L. R. A., 366, the State of Illinois, through her attorney-general, called in question the power of the Pullman Company to erect a ten-story business block at a cost of $2,000,000, three-fourths of the floor space of which was to be held for rent to others. The company was authorized by its charter to purchase and hold ''such real estate as may be necessary for the successful prosecution of its business.'' The court, sustaining the company's plea setting out its claims to justification, said:

''The right of the appellee to construct an office building is indisputable, as so, also, is the right to select the most eligible and desirable site. It would be but a narrow and wholly unjustifiable view of this power to insist that in planning and constructing the building the corporation should leave out of consideration its probable prospective requirements, and should erect a building containing only as many rooms and offices as its present business might demand. The corporation had the right, as we think, to look to and prepare for the future. It was but true economy to do so, and if it proceeded in good faith, as we are to assume from the conceded averments of the plea it did, no reason is perceived why it should be deemed bound

by law to permit such parts of the building as are not for the present required for the accommodation of its business, to remain vacant, but, on the contrary, that it might lawfully obtain such income from the rents of such rooms as might be possible until the growth or increase of its business demanded the additional rooms or offices. A corporation could not be permitted, under mere color and pretense of furnishing accommodations for the transaction of its own affairs, to construct houses or rooms for the purpose of renting the same, and engage in renting such houses or rooms as a business, if such pursuit was, as it here clearly is, beyond and distinct from that it was created to pursue and accomplish. But the averments of the plea do not justify the imputation that the acts of the company under consideration are but colorable, and in this investigation the averments stand confessed by the State.''

The above case was followed in the later case of *Rector* v. *Hartford Deposit Co.*, 190 Ill., 380, 60 N. E., 528, which involved a like charter power and an effort thereunder on the part of a deposit company to erect a fourteen-story building, only a small part of which was for the accommodation of the company's own business.

A broad discretion must be accorded the directors of such a corporation in respect of the character of the building it shall erect for its corporate home. They should as of right take under consideration future necessities and contingencies, provided this be done in good faith and not as a cloak to a speculative invest-

ment. *People* v. *Pullman Palace Car Co.*, supra; *Simpson* v. *Westminster Palace Hotel Co.*, 8 Ho. Lords Cas., 712; 3 Thomp. Corp. (2d Ed.), sec. 2387.

Lord Chancellor Campbell in the *Westminster Palace Hotel Company Case,* where part (one hundred and sixty-nine rooms) of a large hotel building was leased to a branch of the government for offices, and the action was brought in question by a shareholder, said:

"Under this agreement the directors do not abandon the undertaking for which the company was established, and they cannot be said to engage in any new undertaking. . . . As there is neither abandonment nor extension of the original undertaking, and the arrangement may assist, instead of obstructing the prosecution of the original undertaking. I must advise your lordships to affirm the decree appealed against."

Furthermore, only the State (and in particular cases the stockholder) may be heard to question the powers of a corporation in such case.

The proposed action is not wholly beyond or outside the scope of the Life Insurance Company's corporate powers, express or implied, and entirely foreign to the purposes of its creation. The ownership of a home office building clearly falls within the statutory grant of power (subsection 1) to hold real estate "requisite for convenient accommodation in the transaction of business."

Not being an effort to engage in a business which, under any and all circumstances, is beyond its power,

no one but the sovereign may impeach the corporate action as being *ultra vires*. *Rector* v. *Hartford Deposit Co.*, supra; *Farmers', etc., Bank* v. *Western, etc., Co.*, 215 Pa., 115, 64 Atl., 374, 114 Am. St. Rep., 949 (involving the power of a bank to construct a twenty-two story building); 3 Thomp. Corp. (2d Ed.), secs. 2390, 2391; *Barrow* v. *Nashville, etc., Turnpike Co.*, 9 Humph. (28 Tenn.), 304; *Searight* v. *Payne*, 1 Tenn. Ch., 186; *Reynolds* v. *Crawfordsville First Nat. Bank*, 112 U. S., 405, 5 Sup. Ct. 213, 28 L. Ed., 733.

Passing to a consideration of the second query: We fail to find in the quoted statute any power vested in the insurance commissioner to put a veto on any such corporate plans. Investments in bonds and other securities are expressly made subject to his approval; but even loans on real estate as security, it might be contended with much reason, are not.

We think this statute should be read in the light of the development of legislation in this country having to do with the investment of funds by life insurance companies. In those States where the largest of these companies have *situs*, not infrequently the legislatures have undertaken to specify by name the bonds and stocks such concerns may invest in. In this State, instead of scheduling such securities, investment in the same is stipulated to be on or with the approval of the commissioner.

By our statute, and generally elsewhere so far as we are advised, the acquisition and improvement of real estate for such a company's headquarters is not made

to fall under the control of the insurance commissioners or insurance department of the State.

Indeed, by the last paragraph of section 3 of the above act, a limited control is given the insurance commissioner in respect of real estate otherwise acquired (subsections 2, 3, and 4), but it is manifest that the legislature did not intend that such control, or the power of veto, should affect property such as that here in question, the power to own which is governed by subsection 1 of section 3, and the company's charter.

The Code (Shannon, sec. 5165 *et seq.*) lodges with other officials of the State the power to call in question before the courts any excess of corporate action. *State ex rel. v. Turnpike Co.,* 3 Tenn. Ch., 163; *State ex rel. v. Turnpike Co.,* 112 Tenn., 617, 79 S. W., 798, and cases cited.

We do not conceive that in the passage of the legislative act, now under construction, it was any part of the intent of the legislature to shift or divide the responsibility thus devolved by the Code on the law officers of the State. Certainly it was not the purpose to put it in the power of an insurance commissioner to decide absolutely whether such an investment constitutes an abuse of corporate power. That is a matter for the courts to pass upon, when the question is raised as above indicated. *Insurance Co. v. Craig,* 106 Tenn., 624, 642, 62 S. W., 155.

We therefore are of opinion that the answer to the second question should be, as it was below, in the negative.

The result is an affirmance of the decree passed by the chancellor.