CATHOLIC KNIGHTS OF WISCONSIN, Respondent, vs. LEVY and another, Appellants.

*March 3—April 8, 1952.*

For the appellants there was a brief by *Berthold L. Berkwich*, attorney, and *Morgan & Berkwich* of counsel, all of Milwaukee, and oral argument by *Berthold L. Berkwich*.

For the respondent there was a brief by *Whyte, Hirschboeck & Minahan*, attorneys, and *Roger C. Minahan* and *John G. Vergeront* of counsel, all of Milwaukee, and oral argument by *Roger C. Minahan*.

FRITZ, C. J.   As stated in the trial court's decision:

"The plaintiff, Catholic Knights of Wisconsin [hereinafter called the 'Society'], is a fraternal benefit society organized under chapter 208 of the Wisconsin statutes, with admitted assets in excess of $6,000,000. Its growth has required that it seek larger office space than that now owned by it, and it desires to obtain an impressive home office which will be of advantage to it in the operation of its insurance business. The Society has been growing rapidly in the last ten years and since taking on accident and health business it is anticipated that its rate of growth will increase. As

a fraternal benefit society it is engaged not only in the insurance business but in fraternal functions as well.

"The Tower Hotel is a sixteen-story apartment hotel located on North 11th street and West Wisconsin avenue in the city of Milwaukee, Wisconsin. The building and a long-term leasehold, with a balance of approximately seventy-one years, is owned by Tower Operating Company, Inc., a Wisconsin corporation. The corporation owns no assets other than those used or useful in connection with the operation of the hotel property and is engaged in no other business. The building is of a size and style which will lend dignity and be a source of considerable advertising value to the Society, is well located and will accommodate the reasonable future needs of the Society for the performance of its various functions. Its immediate requirements call for the use of between three and four floors in the building. The balance of the building can be advantageously operated and used as apartments for rent, a source of additional income to the Society, while being available for its future growth.

"On October 16, 1951, the Society and the defendants [Leo N. Levy and Eugene V. Roemer], the owners of all of the capital stock of Tower Operating Company, Inc., entered into an agreement by which the Society agreed to purchase and the defendants agreed to sell all the stock. The Society intends to immediately liquidate the corporation and thereby acquire the building and the leasehold.

"On October 31, 1951, the defendants notified the Society that they refused to perform the agreement since they were in doubt as to whether the Society was legally empowered and authorized to purchase the stock, whereupon this action was commenced by the Society for specific performance of the agreement.

"After the commencement of this action, the Society entered into an agreement with the trustees under the will of William Reckmeyer by which the Society agreed to purchase and the trustees agreed to sell the title, in fee simple, to the premises which are the subject of the leasehold and on which the building is located. The aggregate investment of the Society in the building, leasehold, and fee will aggregate less than $1,100,000.

"The Society moved for summary judgment and filed affidavits in support thereof. An affidavit was filed in behalf of the defendants.

"There is no issue of fact raised by the pleadings. The sole issue is the question of law as to the extent of the power and authority of the Society to enter into the agreement.

"Three principal issues are involved:

"(a) Whether or not a Wisconsin fraternal benefit society or insurance corporation may acquire premises for a home-office building containing more space than it immediately requires for such home-office purposes;

"(b) Whether or not a Wisconsin fraternal benefit society may purchase only real estate for home-office purposes, and, if so, whether a long-term leasehold is real estate within the meaning of the Wisconsin statute; and

"(c) Whether a fraternal benefit society may purchase stock in a corporation whose only asset and business is the ownership and operation of a building appropriate and suitable for a home-office building for the Society, for the purpose of acquiring such building for home-office purposes. . . .

"(1) There are two statutes applicable to home-office buildings for fraternal benefit societies, sec. 208.12, Stats., directly applicable to this type of society, and sec. 201.24 (2), Stats. Neither section imposes a quantitative restriction on that part of the building which the Society must occupy. Sec. 208.12, Stats., requires only that the Society not invest more than twenty per cent of its assets in a 'building.' Sec. 201.24, Stats., requires only that those parcels of real estate necessary to the convenient transaction of business may be acquired and repeats the same percentage of asset limitation. *The clause 'necessary to the convenient transaction of its business' does not create a limitation on the size of the structure devoted to the purpose since it is followed by the express permission to have included with its office space, other apartments to rent.* Therefore, it is obvious that the fact that the Society would occupy only twenty-five per cent of the space in the building does not preclude the premises from being necessary to the convenient transaction of its business. The latter clause is clearly only a limitation

on the number of parcels and the kind or character of real estate which may be owned by an insurance corporation.

"This conclusion was reached in *Brown v. Schleier,* 118 Fed. 981 (1902), where a more restrictive statute involving federal banks was construed as authorizing the acquisition. See also *Volunteer State Life Ins. Co. v. Dunbar,* 181 S. W. 159 (1915), and *Farmers Deposit Nat. Bank of Pittsburgh v. West Pennsylvania Fuel Co.* 64 Atl. 374 (1906).

"(2) It is clear that a long-term leasehold, at least leaseholds for more than three years, constitute real estate in Wisconsin, and hence the acquisition of this leasehold qualifies as real estate under the provisions of sec. 201.24 (2) (3), Stats., as that term is used therein. See sec. 235.50, Stats., *Koeber v. Somers,* 108 Wis. 497, 84 N. W. 991; *Bahcall v. Gloss,* 244 Wis. 473, 12 N. W. (2d) 674; *Goodsitt v. Richter,* 216 Wis. 351, 257 N. W. 23.

"The meaning of the term 'real estate' in sec. 201.24, Stats., is governed by the rules of construction set forth in sec. 370.01 (9), Stats. A long-term leasehold under the circumstances is clearly 'an interest in lands' and therefore is 'real estate' within the meaning of sec. 201.24, Stats. . . .

"There is no doubt that this leasehold qualifies as 'real estate' within the meaning of the statutes. . . .

"The question of whether or not a leasehold qualifies as real estate under sec. 201.24 (2), Stats., is no longer an issue, however, in this case. After the commencement of this action, and prior to the hearing on this motion, plaintiff entered into an agreement to purchase the fee which is to be closed at the same time as the acquisition of the stock in the operating company. Upon liquidation of the operating company and consequent acquisition of the leasehold by the plaintiff, and the closing of the agreement to purchase the fee, the fee and the leasehold will merge in the Society. It then clearly will be acquiring real estate within the meaning of the statutes.

"(3) The Society's purchase of the stock of the operating company, with the intent and purpose of liquidation thereof, so that direct acquisition of the building and leasehold will follow, is but a means to an end. It is impliedly authorized by the statutes permitting it to purchase a building suitable for home-office use. . . .

"The agreement of October 16, 1951, was a legally binding contract, validly entered into and fully authorized by the plaintiff, which was legally empowered and authorized to enter into such an agreement. The agreement is fully obligatory on both parties thereto. The defendants were guilty of breach thereof by their refusal to perform said agreement.

"Judgment of specific performance of the agreement of October 16, 1951, in favor of the plaintiff and against the defendants is granted."

In accord with the facts and conclusions thus stated by the court, formal findings of fact and conclusions of law were duly signed and filed by the court on December 31, 1951. Pursuant thereto the court, on January 4, 1952, adjudged:

". . . that the agreement of October 16, 1951, set forth in the complaint be specifically performed; that the defendants upon receipt of the consideration therein provided and upon performance by the plaintiff of all of its obligations required by the agreement to be performed at or before the closing, including the simultaneous agreement of indemnity dated October 16, 1951, deliver to the plaintiff all of the outstanding capital stock of Tower Operating Company, Inc."

*By the Court.*—Judgment affirmed.