Much, to use, *v.* Gorsuch, Appellant.

Argued January 11, 1932.  Before Frazer, C. J., Simpson, Kephart, Maxey and Drew, JJ.

*Kingsley Montgomery,* for appellant.—It was the duty of plaintiff before it made any additional loans to Max Much to make further inquiry, of the defendant to ascertain if he had any set-off or counterclaim to the said $20,000 mortgage.  Plaintiff could not make loans to

Max Much in excess of the $3,000 and charge the same against the collateral as against any right of defendant to a set-off or counterclaim for the default of Max Much in not carrying out his agreement: Wood v. B. & L. Assn., 100 Pa. Superior Ct. 235; Volk v. Shoemaker, 229 Pa. 407; Duquesne Bank, 74 Pa. 426; Frantz v. Brown, 1 P. & W. 257; McCandless v. Engle, 51 Pa. 309; Michener v. Cavender, 38 Pa. 334.

*Paul Lane Ives,* for appellee.—There are no facts disputed by defendant which require submission to a jury: Jenkintown Nat. Bank's App., 124 Pa. 337; English's App., 119 Pa. 533; Bader v. Kell, 301 Pa. 139.

The court below properly held that defendant is estopped: Carnes v. Harlan, 2 Yeates 539, 541; McMullen v. Wenner, 16 S. & R. 17; Fair & Square B. & L. Assn. v. Presbyterian Board, 302 Pa. 162.

OPINION BY MR. JUSTICE KEPHART, February 3, 1932:
Much and Gorsuch agreed, on September 30, 1927, to exchange real estate owned by each. Much's real estate was valued at $60,000 and Gorsuch's at $40,000. To complete the transaction, an adjustment of liens to which both properties were subject was necessary. Much's property had a first mortgage of $15,000 which Gorsuch was to assume as part of the purchase price. He also agreed to pay $25,000 in cash, and the remainder, $20,000, in three years, to be secured by a bond and mortgage on the property he received. Gorsuch's properties were subject to a first mortgage of $17,000, and a second mortgage of $10,000. Much agreed to assume these, and the remainder of this purchase price was to be paid in cash. The net cash difference between the parties was $12,000, which was paid by Gorsuch to Much at the settlement. He also executed and delivered a bond and mortgage for $20,000 to Much.

On January 11th following, Much, who had borrowed from the appellee bank $3,000, made an absolute assign-

ment of the bond and mortgage to the bank. It was, however, as between the assignor and assignee, to be used as collateral security for loans to Much from the bank. Before this assignment to the bank, Gorsuch executed a declaration of no set-off, in which he stated that the sum of $20,000 was still due and that he had "no charge, claim, demand, plea, or set-off upon, for, or against the same in any way or manner whatever." This declaration was delivered to the bank along with the assignment. Thereafter, between January 11, 1928, and March 19, 1929, the bank advanced in all the sum of $25,250 on this and other collateral.

Much was adjudicated a bankrupt in January, 1930, without having paid the mortgages on Gorsuch's property as he had agreed to do. Gorsuch, in May of that year, failed to pay the interest on the bond and mortgage; thereupon the bank entered judgment on his bond. Gorsuch obtained a rule to open the judgment, which the court later discharged, and this appeal followed.

Appellant contends that, since Much failed to pay the mortgages on his property as, under the agreement, he had agreed to do, Gorsuch had a right of action for this breach of the agreement, and he could set-off the sum he was required to pay on account of these mortgages against the bond and mortgage, the total set-off being $29,780. It is not clear from the record when Gorsuch was forced to assume the liability on his mortgages, but it was not until the latter part of 1929, long after the assignment had been made, and all the money had been advanced by the bank. To sustain the appellant's contention, it is argued that it was the bank's duty when each additional loan was made to Much to inquire of Gorsuch if he had any defense or counterclaim on the bond; that, while the assignment as to the bank was absolute on its face, and while at the time it was made Gorsuch did not have any defense to it, as Much had an equity in the bond by reason of his agreement with the assignee that it should be used as collateral for the loans

made, that later on, when such defense did arise, Gorsuch was entitled to take advantage of this equity in asserting his defense.

His contention meets with serious obstacles. The assignment, of which Gorsuch had notice, was absolute on its face, conveying, for valuable consideration, to the assignee all the right, title, and interest of the assignor. It was fortified by the declaration of no set-off as to any part of the bond. Even in the absence of the declaration of no set-off, the rule is broadly laid down that no claim accruing in favor of the obligor against the assignor, subsequent to the assignment, is available as a set-off or counterclaim. "All the cases agree that a set-off to be available against an assignee must have existed in favor of defendant before notice of assignment": 34 Cyc. 747. As stated by Mr. Justice SCHAFFER in Snyder v. The Southwestern National Bank, 294 Pa. 1: "After notice of an assignment of an instrument the party liable thereon cannot set off claims subsequently accruing against the assignor: Philips v. The Bank of Lewiston, 18 Pa. 394; Gaullagher v. Caldwell, 22 Pa. 300; Henry v. Brothers, 48 Pa. 70; Burford v. Hazlett, 165 Pa. 310; 34 Cyc. 747."

This is undoubtedly a correct view of the law where the assignee owns absolutely the assigned instrument, but if it was in fact assigned as collateral only, the assignor may retain an interest of which the obligor may avail himself. We need not decide this question; the assignee in addition to holding the collateral for a loan of $3,000 could use it as such security for additional loans. It is admitted that the notes for these loans were all secured by this collateral. One of the notes in evidence, to which appellant refers as being covered by the collateral, expressly states that the bond and mortgage in question was collateral security for "this and any other liability." Moreover, there was nothing in the assignment to limit its effect, and some notice of a claim should be given the assignee before he made the addi-

tional loans if the obligor knew the bond and mortgage was assigned as collateral only.

We have the further fact as stated above that the additional loans complained of were made without objection on the part of Gorsuch, or without any intimation to the bank that any difficulty existed between Much and Gorsuch. Defendant, months after the assignment and the loans were made, in November, 1929, without objection, paid the interest due in full. By so doing he not only recognized the title to the bond and mortgage as being in the assignee, and that the ownership was absolute, but that he had no defense at that time. Otherwise, he would have withheld the interest or paid it to the one who he considered was the real owner of the instrument. No one in the bank had any reason to suspect that any possible defense would be made to the bond and mortgage prior to that time when appellant refused to pay the interest due on it. At the time the defense arose, but it was then subject to the paramount claim of the bank.

Appellant's cases, holding that the assignee of a bond normally takes it at his peril, subject to every defense then existing or that it might be subjected to in the hands of the assignor, do not apply: Volk v. Shoemaker, 229 Pa. 407; Duquesne Bank, 74 Pa. 426. This rule would apply in the absence of the declaration of no set-off. As to the effect of the declaration of no set-off see McMullen v. Wenner, 16 S. & R. 18, 20.

It is inevitable that the defendant's claim existed or accrued either before or after he signed the declaration of no set-off. If it accrued before, his declaration would most certainly estop him from now asserting that he has such a claim, and if it accrued afterwards, it is clear from what has been stated above that it could not be used as a set-off.

Judgment affirmed.