McRoberts *v.* Stadelman, Appellant.

Argued November 17, 1950. Before HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (RHODES, P. J., absent).

*Walter J. Wagner,* for appellant.

*Walter W. Riehl,* for appellee.

OPINION BY ARNOLD, J., March 12, 1951:

Defendant appeals from the refusal of the court below to open a judgment confessed upon warrant of attorney for rentals due under a lease.

In 1938 plaintiff leased premises in Pittsburgh to the Sun Oil Company for a ten year term at a monthly rental of $120, with optional renewals. The plaintiff agreed to construct a building thereon for filling station purposes. The Oil Company then leased back the same premises to the plaintiff, who executed an agreement that he would sell only its products. This is known as a "washout" transaction, evidently made to control the sale of the petroleum products of the Oil Company.

On August 2, 1947, in consideration of $3,400, plaintiff agreed to sell to defendant, clear of all encumbrances, all the service station, business, stock and equipment. He agreed to rent the land and building to the defendant for $220 per month, and gave him an option to buy the same for $30,000. The defendant paid some $1,365 for the stock and petty cash.

On August 6, 1947, plaintiff took defendant to the Oil Company and defendant there entered into a lease for the premises with that Company for a term ending in August, 1948, at a monthly rental of $120. This replaced the lease which the Oil Company had given to the plaintiff. Defendant and the Oil Company also executed a products agreement similar to that which the plaintiff had had.

*After* executing the lease with the Oil Company, but on the same day, plaintiff and defendant entered into a lease of the premises for a term ending August 8, 1948, at a monthly rental of $100. This instrument provided:

"This lease subject to the terms of the Sun Oil Company lease drawn up for the same period and *in consideration of leasing the station from above lessor, tenant agrees to pay $100 per mo. as specified above.*" (Italics supplied). Automatic renewals for one year periods were provided if the lessee remained in possession (under the Sun Oil Company lease).

Defendant retained possession until the Oil Company cancelled its renewal lease with him in December, 1949. He was not evicted by the Oil Company, but declined to pay further rent to the plaintiff after April, 1949, and after the expiration of the term plaintiff confessed the monetary judgment aforesaid. Plaintiff's judgment was for rent from April 8, 1949, through December 8, 1949.

The above is an attempted simplification of a mass of written instruments, many of which have nothing to do with the actual questions involved.

In the petition to open judgment the defendant contended that since the plaintiff had previously leased the same premises to the Sun Oil Company, he had nothing to lease to the defendant; or, conversely, that the plaintiff had leased the same premises to two tenants and cannot collect rental from both. Parenthetically, it may be observed that even this contention has been decided adversely to the appellant: *Babcock Lumber Company v. Allison,* 136 Pa. Superior Ct. 353, 7 A. 2d 374.

The petition also averred that defendant was entitled to restitution for the rent which he had paid and to which he claimed the plaintiff was not entitled. This was set up as a counterclaim or set-off to the judgment itself. It is but a variation of the former theme, i.e., that plaintiff had nothing to lease to defendant.

Plaintiff was the owner of the reversion under the lease to the Oil Company. His *agreement* to lease to the

defendant was, in effect, an agreement to sublet, and was effectuated by the cancellation of the plaintiff's lease from the Oil Company, and by the latter giving a new lease to the defendant.

There was no fraud of any kind upon the defendant, who entered into the transaction with full knowledge of every fact upon which he now bases a claim of fraud. He obtained the cancellation of the old lease (and a products agreement) from the Oil Company to the plaintiff, by agreeing to execute a new lease with the plaintiff, and by obtaining similar agreements from the Oil Company. He remained in possession through two renewals of his lease from the Oil Company, and until December 25, 1949; but paid his rent only to April 8, 1949.

There was no eviction by the Oil Company, nor was there duress or any other set of facts which entitled defendant to have the judgment opened. In the absence of these or similar circumstances, not existing here, a tenant may not dispute his landlord's title: *Farmers Deposit National Bank of Pittsburg v. Western Pennsylvania Fuel Company*, 215 Pa. 115, 64 A. 374, which cited with approval the statement made by Dean Trickett in his work on Landlord and Tenant in Pennsylvania (1st ed.) §756, to the effect that a tenant, by entering into possession of the premises in pursuance of a lease, is precluded from refusing to pay the rent on account of defects in the title, and evidence of such defects is irrelevant and inadmissible in an action for the rent. See also *Babcock Lumber Company v. Allison*, supra, reviewing the cases, and *Warner Brothers Theatres, Inc. v. Proffitt et ux.*, 329 Pa. 316, 198 A. 56. Appellant's claim for restitution of the rent which he had paid must, on the same premises, fall. In addition, where there is no fraud, normally a judgment will not be opened in order to plead a set-off or counterclaim

not reduced to judgment: *McKee v. Verner,* 239 Pa. 69, 86 A. 646; *Keystone National Bank of Manheim, to use, v. Deamer,* 144 Pa. Superior Ct. 52, 18 A. 2d 540. The order of the court below is affirmed.