Bridgewater Borough, Appellant, *v.* Pennsylvania Public Utility Commission et al.

Argued April 12, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Thomas C. Buchanan, Charles McC. Barrickman,* and *Wallover & Barrickman,* for Borough of Bridgewater, appellant.

*Joseph A. Beck,* with him *Beck, McGinnis & Jarvis,* for protestant, appellant.

*Albert E. Luttrell,* Assistant Counsel, with him *William A. Donaher,* Assistant Counsel, and *Thomas M. Kerrigan,* Acting Counsel, for Pennsylvania Public Utility Commission.

*Thomas H. Crider,* with him *John R. Rezzolla, Jr.,* and *George M. O'Hora,* Counsel, *Joseph L. Donnelly,* Deputy Attorney General, and *Herbert B. Cohen,* Attorney General, for Department of Highways, intervening appellee.

*R. L. Orr,* with him *John D. Ray* and *Reed, Ewing & Ray,* for intervenor, Borough of Rochester.

ORDER PER CURIAM, April 18, 1956:
The orders of the Pennsylvania Public Utility Commission of December 12, 1955, are affirmed, at appellants' costs. The opinion of this Court will be filed at a subsequent date.

OPINION BY HIRT, J., July 5, 1956:
On May 28, 1954, the Department of Highways of the Commonwealth filed its application with the Pennsylvania Public Utility Commission for the alteration

of the subway through which State Highway Route 76[1] crosses the tracks of The Pittsburgh & Lake Erie Railroad below grade. At the same time and as a part of the same project the department filed a second application with the Commission for the approval of a crossing above the grade of the tracks of The Pennsylvania Railroad on the east bank of the Beaver River. The subway, on the west connected the Borough of Bridgewater with the City of Beaver. The contemplated crossing over the Pennsylvania Railroad is in the Borough of Rochester. By an established plan, approved by the Governor of the Commonwealth on March 8, 1954, the Department of Highways added to the State highway system, by relocation or otherwise, sections of new routes numbered 76 and 204 in the Boroughs of Rochester and Bridgewater in Beaver County. Other highways ultimately will be affected but we are here concerned only with the above routes 76 and 204 relocated as limited-access highways. The contemplated crossing of Pennsylvania Railroad is on Legislative Route 204 with a proposed connecting ramp, referred to as Ramp A, for eastbound traffic down into Rochester Borough. The Department of Highways intends to construct the component parts of the entire improvement by four stages, in sequence. The "First Stage" here involved includes the building of a new bridge across the Beaver River westwardly from the Pennsylvania Railroad

---

[1] The original and existing State Highway Route 76 extends in a general northwesterly direction from the City of Pittsburgh along the Ohio River to Monaca Borough, thence across the Ohio River to Rochester Borough, and via Rhode Island and Brighton Avenues to Conway Corners in that borough. The original Route 76 extends thence by way of an existing bridge across the Beaver River to Bridge Street in Bridgewater Borough; and thence under grade of the P. & L. E. railroad tracks connecting with a State highway at Third Street in the Borough of Beaver.

crossing on relocated Route 204[2] which will approach the crossing by way of Adams Street in Rochester Borough. Route 204 will then cross the new bridge and along with Route 76 will continue westwardly on the new limited-access through highway, to be constructed on filled ground, through the Borough of Bridgewater. Before reaching the west line of the Borough, Route 204 will leave the limited-access highway by means of a descending ramp and will continue northwestwardly crossing original State Highway Route 76 below grade and ultimately connecting with State Highway Route 51 which runs into Ohio at a point southwest of New Castle. Relocated Route 76 has been referred to in the record as a Legislative Route. The old State Highway Route 76 will still remain and will run to the Beaver line and there join the new Route 76 just before crossing the P. & L. E. Railroad below grade into the City of Beaver. In the interest of clarity (if not strict accuracy) we will refer to the limited-access highway which will cross the new bridge from Adams Street in Rochester Borough and, extending westwardly (for about 750 feet through Bridgewater) in the new location into Beaver as, L.A.H. 204-76.

The present construction program is the response of the Department of Highways of the Commonwealth to an insistent public demand for the solution of serious traffic problems in the area. All parties agree (to quote from the brief of one of the appellants), that "The point of greatest traffic congestion is the inter-

---

[2] The bridge across the Beaver will have a roadway width of 60 feet between curbs with a "four-foot divisor" in the center line of the cartway. The magnitude of the structure is indicated by its cost of about 2 millions. No sidewalks are contemplated either on the bridge or on the ramps leading to it, for the reason that the entire bridge improvement as contemplated will be an integral part of a limited-access highway.

section of West Madison Street and Delaware Avenue in Rochester, known locally as 'Conways Corner' ". Westbound traffic on State Highway Route 76 of necessity was obliged to submit to the delays incident to negotiating the bottleneck at Conway Corners. So also, traffic moving north from Rochester to New Brighton, Beaver Falls and other points, including the Beaver Valley Exchange of the Pennsylvania Turnpike, came to Conway Corners and contributed to the congestion, before proceeding along Delaware Avenue in Rochester. In the approach to the problem the Highway Department employed a competent firm of engineers who were also familiar with the local problems involved. They were asked to suggest changes in the flow of highway traffic throughout the area, to relieve the congestion principally at Conway Corners in Rochester Borough.

The Limited Access Highways Act of May 29, 1945, P. L. 1108, 36 PS §2391.1 defines a limited access highway "as a public highway to which . . . the traveling public have no right of ingress or egress to, from or across such highway, except as may be provided by the authorities responsible therefore." Section 2(a) of the Act as amended by the Act of June 10, 1947, P. L. 481, 36 PS §2391.2 authorizes "The Secretary of Highways, with the approval of the Governor . . . to declare any State highway route, or part thereof, now or hereafter established, to be a limited access highway"; and the same section provides (b) "Whenever the establishment of a limited access highway will facilitate the movement of traffic the Secretary of Highways, with the approval of the Governor, is hereby authorized to lay out new highways, take over existing highways, or parts thereof, and declare the same to be a limited access highway to be constructed and maintained as a State Highway." As a solution to the present problem

the Highway Department, after a local survey and consideration of reports of its engineers, developed a plan for the relief of traffic congestion in the area which contemplated the establishment of the new limited-access highway above referred to. To give effect to the proposal the Governor of the Commonwealth, in addition to signing plans establishing as limited-access highways, sections of various Legislative Routes which we have identified above as L.A.H. 204-76, also approved the condemnation of property where necessary, in accordance with the plans submitted by the Highway Department.

By §409 of the Public Utility Code of May 28, 1937, P. L. 1053, amended by the Act of May 25, 1945, P. L. 1012, 66 PS §1179, the Public Utility Commission was vested with exclusive power in relation to the relocation of the crossing of Legislative Route 204 over the Pennsylvania Railroad together with Ramp A leading therefrom, as well as the alteration of the crossing under grade of the Pittsburgh & Lake Erie Railroad, and the appropriation of property incident to these crossings. Accordingly, on May 28, 1954, by application filed with the Commission, docketed at 81263, the Department of Highways sought Commission approval of the alteration of the P. & L. E. Railroad crossing. And by a second application, filed the same day and docketed at 81264, Commission approval was sought for the construction of the Pennsylvania Railroad crossing.

Application 81263 came on for hearing before the Public Utility Commission on September 24, 1954. The Borough of Bridgewater appeared and its present counsel represented the interests of the borough throughout the hearing on that date and at adjourned hearings on April 12 and April 22, 1955 and on July 11, 1955. Keystone Bakery Inc. (appellant in No. 49) protesting the Highways Department's application 81263 participated

in the hearings and filed its brief with the Commission on September 13, 1955. The Commission filed its final order on December 12, 1955. In accordance with the relocation plans the Commission approved the continued use of the existing crossing carrying traffic on State Highway Route 76 under the four tracks of the Pittsburgh & Lake Erie Railroad into Beaver City. The plans, as approved however, provided for the lowering of the highway through the underpass by approximately two feet. This change will increase the ascending grade on the Beaver side of the underpass from 8% to 9% for a distance of 77 feet. Other changes were involved in the approval. The sidewalk along the southerly side of the passage will be removed, thereby increasing the width of the roadway to 40.25 feet. The sidewalk along the northern side of the roadway will be retained with a guard rail constructed along the curbline. In addition, to provide pedestrian access from the borough to the Beaver Station of the P. & L. E. Railroad a cantilevered sidewalk will be constructed over the tracks with connecting stairways a short distance north of the P. L. & E. subway. A pedestrian bridge will also be constructed over Legislative Route 204 where it crosses Bridge Street, after separating from Legislative Route 76 in Bridgewater. Bridge Street in Bridgewater will be closed by a barricade at a point just east of the underpass where Bridge Street would otherwise intersect the relocated Legislative Route 76.

A hearing on application 81264 followed the hearing on application 81263 at the Court House in Beaver on September 24, 1954. The Borough of Bridgewater did not appear and was not represented at the hearing on this second application. On April 4, 1955, the Commission issued its order approving the application of the Department of Highways at 81264 and ordered the construction of the crossing and the bridge in accord-

ance with the Highway Department's plans. On April 12, 1955, the Borough of Bridgewater petitioned the Public Utility Commission for a rehearing on Application 81264 and for reconsideration of its prior order and assigned as reason therefore, lack of prior notice of the application. The borough alleged that it did not appear at the hearing on this application on September 24, 1954 because it had not received notice of the hearing and contended that it was foreclosed thereby from protesting and objecting to the proposed construction. The Commission ordered the matter set down for hearing on June 13, 1955, for the limited purpose of taking testimony on the question whether the Borough of Bridgewater had received notice of the application and of the dates when the matter would be heard. An adjourned hearing on the petition was held July 11, 1955. On December 12, 1955, the Commission denied the application of the borough for a rehearing and reconsideration of its prior order of April 4, 1955. In so holding, the Commission found that the borough had adequate prior notice of the proceedings and of the dates fixed for hearing thereon. Accordingly the Commission then affirmed its original order dated April 4, 1955.

In appeal No. 46 the Borough of Bridgewater contends for a reversal of the order in 81264 alleging that the record does not support the finding that "adequate and proper notice" was given the borough of the hearing on that application on September 24, 1954. Other questions are raised by this appellant, and by the borough and by Keystone Bakery Inc., in their appeals Nos. 45 and 49. In all of these appeals the Department of Highways intervened as an additional appellee. We refused supersedeas, and on April 18, 1956, we affirmed the orders of the Commission, stating that an opinion setting forth our reasons for our affirmance would be

filed at a later date. This is that opinion; in it we have consolidated all of the appeals for disposition. The allocation of costs incident to the execution of the applications as approved, is not involved in any of these appeals inasmuch as the entire construction costs including damages will be met in equal shares by Federal aid and by the State of Pennsylvania through the Department of Highways.

Perhaps the most serious question raised in any of these appeals is whether Bridgewater had advance notice of the hearing on application 81264. These are the proofs: A letter dated June 22, 1954, addressed to H. H. Romigh, Burgess of The Borough of Bridgewater gave notice of a "conference and investigation" to be held on June 30, 1954, with a request to "have a representative present if you are interested in the proceedings." The letter was signed by Merle A. Forst, "Advanced Railroad Engineer" of the Public Utility Commission. A copy of the letter was also mailed to the Secretary of the Borough. The caption of this letter referred specifically to both applications of the Highway Department in the language quoted in the margin.[3] And by a second letter addressed to the Burgess of the Borough, dated August 25, 1954, the Commission by its

---

[3] "In re: A81263—Application of the Department of Highways for approval of the alteration of the crossing where State Highway Route 76 crosses below the grade of four tracks of The Pittsburgh & Lake Erie Railroad Company, located partly in the Borough of Bridgewater and partly in the Borough of Beaver, Beaver County, and the allocation of the costs and expenses incident thereto.

A81264—Application of the Department of Highways for approval of the construction of a crossing where State Highway Route 204, relocated as proposed, and the proposed highway known as Ramp 'A' leading therefrom, will cross above the grade of four tracks of The Pennsylvania Railroad Company, in the Borough of Rochester, Beaver County, and the allocation of the costs and expenses incident thereto."

acting secretary gave notice as follows: "You are hereby advised that the Commission has set Friday, September 24, 1954, at 10:00 a.m., D.S.T., in the Courthouse at Beaver, as the time and place for hearing in the above captioned matters. We are enclosing lists of questions, prepared by our Bureau of Transportation, indicating the information to be developed at the hearing, along with other relevant testimony. Please acknowledge receipt of this letter." Attached to the letter was the so-called "questionaire" which in 40 separate specifications indicated relevant factual issues to which the hearing would be addressed. This letter, also, in its caption referred to both applications 81263 and 81264 in substance as in the letter of June 22, 1954. Receipt of both of these letters is admitted. The borough appeared at the Commission hearing of September 24th on application 81263 but did not appear at the hearing on application 81264 which followed it on the same day. The borough completely ignored the proceedings on the Pennsylvania Railroad crossing application until after the orders of the Commission approving both crossing applications.

The reference to application 81264 in the caption of the above letter of June 22, 1955, did not give notice specifically of the contemplated bridge across the Beaver. But clearly from this letter together with other evidence in this record, Bridgewater Borough, through its agents, either had actual knowledge of the scope of the application or were put on inquiry which would have developed the fact that the bridge was a part of the "First Stage" of the construction program of the Highway Department. The Commission's letter stated that a field conference on both applications would be held on June 30, 1954 at 10:30 a.m. at the site of the undergrade crossing in Bridgewater, and that all parties interested would proceed thence to the Pennsylva-

nia Railroad crossing in Rochester. The representative of Bridgewater, who had been appointed by the Borough Council as its representative, testified that he went to the appointed place but saw no one, and on his report to this effect the Council made a note in its minutes that "nobody showed at the crossing at the time." The record demonstrates that the conference on the morning of that date was attended by representatives of 22 of 23 utilities, municipalities and others in response to similar notices of the meeting; the single exception being the representative of the Borough of Bridgewater. The inference follows that Bridgewater's representative could have located this group if he had wanted to, by the exercise of a little diligence. The field conference at the sites of both crossings disclosed to all present, the nature of both applications and specifically the projected bridge to connect the Pennsylvania Railroad crossing with the proposed relocated limited-access highway L.A.H. 204-76. Moreover notice of the above grade crossing over the Pennsylvania Railroad on Route 204 as relocated and the proposed highway known as Ramp "A" leading therefrom down into the Borough of Rochester in itself put the appellant borough on inquiry as to the place of the crossing. An overhead crossing of the railroad on the east bank of the Beaver River should have suggested to the Bridgewater authorities that a bridge of some kind was a necessity to carry traffic westwardly from the crossing. An elevated crossing, ending in thin air at the river's edge, could render no service to vehicular traffic on a public highway. In addition to the above letters there is other evidence in this record that this appellant either knew or should have known of the bridge crossing contemplated in 81264. The Secretary of the Borough of Bridgewater testified that the Borough Council, by resolution, had gone on record on September

18, 1954, as opposing the condemnation plans in this language: "Be it further resolved that the Borough of Bridgewater is opposed to the proposed improvements for the following reasons: . . . The Borough of Bridgewater does not agree to the construction of the improvement as proposed by the Department of Highways, Commonwealth of Pennsylvania, to Routes . . . No. 76 and No. 204, Condemnation of Right of Way of which was approved by Governor John S. Fine on June 15, 1954 and further states that it will not agree to pay or assume any portion of the construction and future maintenance cost thereof." The caption of application 81263 shows that it relates solely to Route 76 (as relocated) and the caption of 81264 that it refers to Route 204, alone. Reference to the condemnation plans approved by the Governor show a bridge across the Beaver River connecting with Limited Access Route 204. The plans which the appellant borough examined and disapproved in connection with both applications gave notice of the location of Route 204 where it connected with relocated Route 76 by means of the new bridge and the "questionaire" accompanying application 81264 referred to the detailed plans of the bridge structure which had been submitted by the Highway Department. Moreover, appellant's present counsel in cross-examining Ernest Lehner, an engineer of the Highway Department, at the hearing on September 24, 1954 on 81263, questioned him as to the type of construction of the "new bridge . . . across the Beaver River," indicating that he then had actual knowledge of it. One "has notice of a fact if he or his agent knows the fact, has reason to know it, should know it, or has been given a notification of it.": Restatement, Agency, §9, (1). It is idle for the Borough of Bridgewater to assert in this appeal that it did not have sufficient notice in application 81264 of the new bridge connecting with the crossing.

Information which could have been obtained in response to notice, which put this appellant on inquiry, charges it with the equivalent of knowledge of all phases of the contemplated structures. *Quigley et al. v. Breyer Corp. et al.*, 362 Pa. 139, 66 A. 2d 286.

The Commission did not err in refusing to consider alternate routes for the solution of the traffic problems involved. Initially, whether any part of a State Highway is dangerous and inconvenient to the traveling public is a question for the State Highway Department. Under §§206-208, 210 of the State Highway Law of June 1, 1945, P. L. 1242, 36 PS §670-206, et seq. the Secretary of Highways has full power to change the location of a highway in such manner as in his discretion may seem best in order to eliminate dangerous conditions or inconvenience to the traveling public. And in general one who is not entitled to damages under the law, must address his complaint to the Secretary of Highways. It is only where the change in the course of a part of a highway involves the relocation or abolition of crossings of the facilities of public utilities that the Public Utility Commission has authority to question the decision of the Highways Department in making the change. The jurisdiction of the Commission when it attaches is exclusive under §409 of the Act, supra. But while the Commission's jurisdiction in crossing cases is exclusive, it is not unlimited. In giving jurisdiction to the Commission as to crossings, the legislature certainly did not intend "to take from the Department of Highways all jurisdiction in the relocation of state roads and commit that control to another agency": *Somerset County v. P. U. C.*, 132 Pa. Superior Ct. 585, 599, 1 A. 2d 806. The question before the Commission here is not whether the Secretary of Highways, in his discretion might have adopted a different location for a limited-access highway to avoid the bot-

tleneck at Conway Corners, but whether the construction of the crossing over the Pennsylvania Railroad and the alteration of the crossing below the Pittsburgh & Lake Erie Railroad in accordance with the plan of the Secretary of Highways, approved by the Governor, were "necessary or proper for the service, accommodation, convenience or safety of the public." Cf. *Somerset County v. P. U. C.*, supra. To warrant the granting of a certificate of public convenience reasonable necessity, and not absolute necessity, need be proved and in an appeal from an order granting such certificate we do not sit as a "super administrative" board. *Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C.*, 170 Pa. Superior Ct. 411, 85 A. 2d 646.

After full consideration of the testimony before it, the Commission determined that the alteration of the crossing "in accordance with the general plans submitted of record at this hearing held September 24, 1954 as Applicant's Exhibits Nos. 2 and 3, revised . . . is necessary or proper for the service, accommodation, convenience or safety of the public . . ." Accordingly, in its order of December 12, 1955, application 81263 was approved. A like finding and determination was made on application 81264 which was reaffirmed by the Commission on December 12, 1955. The basis of the Commission's action in cases of this kind is the interest of the public. *Arsenal Board of Trade v. Pa. P. U. C.*, 166 Pa. Superior Ct. 548, 554, 72 A. 2d 612. And there can be no valid objection to the Commission's orders which will relieve traffic congestion in the area even though the change might result in personal inconvenience to some residents in Bridgewater. However, there is no evidence of positive injury nor even of serious inconvenience to any of the 1500 people of Bridgewater in these cases. The appellant bakery is the only industry in this small borough. Of 20 trucks which deliver its products to deal-

ers, only eight will use one of the crossings here involved, viz: the underpass into Beaver. The inconvenience imposed upon this appellant by the relocation of the highway and the change in the underpass will not be unreasonable. On the return through the underpass these trucks will be routed south to Wolf Lane a distance of less than 200 feet and, traveling eastwardly, will return to the bakery on Market Street through a subway below the limited-access highway Routes 204 and 76.

A bridge according to the statutory connotation of §101 of the Act of May 28, 1937, P. L. 1019, as amended, includes "The actual bridge and the approaches thereto" and certainly an elevated crossing, connecting with a bridge with a descending ramp, includes the bridge as a part of the crossing and the Commission so considered it. So also in the proceeding on application 81263 for alteration of the underpass the Commission had in contemplation much of the limited-access highway between the bridge and the underpass, together with the connecting ramps. The question of safety and convenience of the public in the use of the crossings includes the approaches to them. Cf. *Pgh. & Shawmut R. R. Co. v. Pa. P. U. C.*, 141 Pa. Superior Ct. 233, 14 A. 2d 903.

As affecting the public interest, contrary to the appellants' contentions, the evidence demonstrates: that safe and convenient passageways will be available to school children of Bridgewater who attend schools in Beaver; the aged and infirm will not be required to use the pedestrian overpass to reach the P. & L. E. Railroad station; and the embankment upon which the limited-access highway will be constructed will not add to the hazard of flood waters; the closing of Bridge Street at the P. & L. E. Railroad will not result in inconvenience to any one since a new highway will give access

to the underpass and to Route 204 running north through Bridgewater; the slight increase in grade of the underpass leading into Beaver is insignificant.

As an administrative body the Commission is bound by the due process provisions of constitutional law and by the principles of common fairness. *West Penn Power Company v. Pa. P. U. C.,* 174 Pa. Superior Ct. 123, 100 A. 2d 110. There is nothing in this record which approaches unfair treatment of these appellants, or the public generally, by the Commission and certainly there was no denial of due process. There is no merit in the contention to the contrary.

The scope of our review in these appeals from the above orders is within restricted limits. An order of the Commission may not be vacated or set aside "except for error of law or lack of evidence to support the finding, determination or order of the Commission, or violation of constitutional rights." Section 3, Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 PS §1437. We may not exercise our independent judgment nor weigh conflicting evidence. *Horn's Motor Express, Inc. v. Pa. P. U. C.,* 148 Pa. Superior Ct. 485, 26 A. 2d 346. Section 1112 of the Act, 66 PS §1442, provides that whenever the Commission makes an order, on the authority of the Act, it shall be prima facie evidence of the facts found. We need not prolong this opinion by reviewing the testimony to demonstrate that the determination and orders of the Commission are supported by substantial competent evidence. The questions before the Commission were administrative and its orders on the merits are supported by sufficient evidence with rational probative force. The orders are far from being capricious or arbitrary and therefore may not be disturbed by this court for lack of evidenciary support. So also, there is no merit in the complaint that the Commission failed "to make necessary

findings of fact in supporting its conclusions." The purpose of §1005 of the Act which provides that the Commission shall make and file detailed findings with its opinion and order is "to enable the court on appeal to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence." The requirement is intended to be in aid of the Court. Cf. *Philadelphia v. Pa. P. U. C.*, 162 Pa. Superior Ct. 425, 57 A. 2d 613. We have had no difficulty in informing ourselves of the questions presented in these appeals; more detailed findings under testimony, as to which there is no serious dispute, were not called for in these cases.

In lieu of the provision as to costs in our order of April 18, 1956, affirming the orders of the Commission, each party in these appeals is now directed to pay its own costs.