## City of Arnold, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued April 13, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*Christ. C. Walthour, Jr.,* with him *Andrew S. Romito, Fred B. Trescher,* and *Kunkle and Trescher,* for appellant.

*Anthony L. Marino,* Assistant Counsel, with him *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellee.

OPINION BY GUNTHER, J., June 15, 1960:

This appeal by the City of Arnold is from the order of the Pennsylvania Public Utility Commission denying a rehearing and from the order dated May 20, 1959 in connection with a grade crossing relocation.

The City of New Kensington filed a complaint against the Pennsylvania Railroad Company, the County of Westmoreland and the Department of Highways of the Commonwealth of Pennsylvania before the Pennsylvania Public Utility Commission seeking correction of an allegedly hazardous railroad crossing connecting the City of New Kensington with the City of Arnold at or near the northerly boundary line of the City of Arnold and the southerly boundary line of the City of New Kensington. Three hearings were held in connection with this matter before the City of Arnold became a party. After the third hearing on March 21, 1957, the Commission, while awaiting the submission of further information necessary in the case, received a letter from the City of New Kensington on October 22, 1957 in which it was advised that the City of Arnold was geographically involved in the improvement. This became apparent when revised plans were submitted and the proposed revision disclosed that property belonging to the City of Arnold might become involved. The Commission promptly informed the City of Arnold and scheduled a further hearing for November 13, 1957.

At this hearing the City of New Kensington and the Pennsylvania Railroad were represented, and the City of Arnold appeared by its solicitor who entered a general appearance, heard a general review and explana-

tion of the newly developed plan for improvement of the crossing, offered its own witnesses for direct and cross-examination, and cross-examined other witnesses who testified. Another hearing was scheduled for January 5, 1959, at which the City of New Kensington, the Pennsylvania Railroad, the County of Westmoreland and the City of Arnold, as well as the Commission, were represented.

Both prior to and subsequent to the hearing of January 5, 1959, a questionnaire was submitted to both cities involved seeking information as to the exact boundary line between the two cities with reference to Ferry Street involved in the grade crossing relocation, whether additional property was required for the relocation of Ferry Street, whether such property is located in the City of New Kensington or in the City of Arnold, requesting the City of Arnold to submit testimony as to what portion of the work of reconstructing Ferry Street it will agree to perform and the cost thereof it will agree to assume and other information affecting the proposed crossing. At the conclusion of this hearing, the examiner stated that it will be up to the Commission to determine, based on all the answers contained in the questionnaire, whether a further hearing should be held and that if the Commission is satisfied, it could declare the matter closed. No further hearings were held and on May 20, 1959, the Commission entered its order allocating the costs of the relocation.

Subsequent to the order both the City of Arnold and the Pennsylvania Railroad Company filed petitions for rehearings and on July 20, 1959, the Commission denied both applications.

Appellant contends that under the Public Utility Law, 66 P. S. section 1179 et seq., while the Commission had full authority to order the relocation of a

crossing and to allocate the costs among the municipalities and others involved, all parties in interest must be made parties. It further contends that the City of Arnold was a necessary party to the proceedings but that it was not made a party to the original proceedings. There is no doubt at all that any party in interest must be made a party to the proceedings, and there is no doubt that the City of Arnold was a necessary party. As soon as the Commission was informed that appellant was geographically involved, it promptly advised the city of this fact and scheduled a further hearing.

The record indicates that the three hearings conducted in the absence of appellant were exploratory hearings to determine the necessity for a change in the grade crossing. When it became apparent that the City of Arnold would be involved geographically in the proposed crossing, it was made a party and participated in the hearings thereafter. Having appeared at the hearing held on November 13, 1957, it had the right and the opportunity to fully develop and present its case. Furthermore, it had the right, if additional time and testimony were required, to ask for a continuance for further hearing. As a matter of fact, another hearing was scheduled and appellant was present at this hearing, also. At the hearing on November 13, 1957, appellant cross-examined witnesses and presented its own witnesses to develop its theory to the effect that the City of Arnold would have no need for the proposed crossing if a new road would be constructed from 19th Street in the City of Arnold and extending northwardly along the westerly side of the railway to the American Window Glass plant.

The examiner invited counsel for appellant to introduce testimony (139a) : "Has the City of Arnold any further testimony to be introduced? Mr. Romito:

Yes. I think we agree together on the record the land belongs to the City of Arnold." Thereafter additional testimony was produced by appellant. Again, appellant was asked (143a) : "Any other testimony of the City of Arnold at this time? Mr. Romito: No." When the examiner then concluded the testimony, appellant made no effort to present additional testimony (151a) : "Examiner Claster: Testimony now concluded. Is it your desire to submit the matter on the record or to file briefs? Mr. Brinkworth: On the record. *Mr. Romito: On the record.*"

Appellant also urges that the failure to include it in the very first proceeding was a violation of due process of law. In view of what transpired, it is difficult to understand this contention. In *Borough of Bridgewater v. Pa. P. U. C.,* 181 Pa. Superior Ct. 84, 124 A. 2d 165, a similar contention was considered concerning the adequacy of notice of hearings. We there said: "It is idle for the Borough of Bridgewater to assert in this appeal that it did not have sufficient notice in application 81264 of the new bridge connecting with the crossing. Information which could have been obtained in response to notice, which put this appellant on inquiry, charges it with the equivalent of knowledge of all phases of the contemplated structures. Quigley et al. v. Breyer Corp. et al., 362 Pa. 139, 66 A. 2d 286." Further, we said: "As an administrative body the Commission is bound by the due process provisions of constitutional law and by the principles of common fairness. West Penn Power Company v. Pa. P. U. C., 174 Pa. Superior Ct. 123, 100 A. 2d 110. There is nothing in this record which approaches unfair treatment of these appellants, or the public generally, by the Commission and certainly there was no denial of due process. . ."

In *Byers v. Pa. P. U. C.*, 176 Pa. Superior Ct. 620, 109 A. 2d 232, we made the following observation: "We have stated 'that it is the duty of the administrative boards to hold fair and open hearings and to give notice so that those interested may have an opportunity to be heard and the "rudiments of fair play" be observed': McCormick v. Pa. P. U. C., 151 Pa. Superior Ct. 196, 30 A. 2d 327. There were no violations of these principles in the present case. All of the parties were present at the hearing and they did not protest the closing of the record as to them. Moreover they sat silent for more than four months after the hearing and took the chance of an unfavorable decision before petitioning for a further opportunity to be heard. And the evidence which they intended to offer at the rehearing was available and susceptible of production long before the Commission acted."

In view of the record here presented, we find no merit to this contention.

Finally, appellants contend that the Commission abused its discretion in denying its petition for a rehearing. The Commission's order of May 20, 1959, was handed down a year and a half after the comprehensive hearing of November 13, 1957, and four and a half months after the final hearing of January 5, 1959. Appellant concedes the law to be clear that the grant or refusal of a petition for rehearing is a matter within the sound discretion of the Commission and that its action will not be reversed unless a clear abuse of discretion is shown. *Pittsburgh Railways Co. v. Pa. P. U. C.*, 180 Pa. Superior Ct. 201, 119 A. 2d 804. In its petition, there was no showing that the evidence which it desired to present was not available at the time it was made a party to the proceedings. The reasons advanced, even if proved at a rehearing, would not show an abuse of discretion by the Commission. In effect,

appellant's protest seems to be that the crossing will not benefit the residents of the City of Arnold notwithstanding the fact that the city serves a taxpaying glass company which employs approximately 900 persons. We can find no abuse of discretion here.

The order of the Commission is affirmed.

DISSENTING OPINION BY MONTGOMERY, J.:

I dissent from the majority in this case principally because the order of the Commission was entered before its hearings were completed. At the close of the hearing on January 5, 1959 (R. 166a), the Examiner stated, "While there is no further testimony to be adduced at this time, the testimony is not complete and the matter is continued to a time and place to be set by the Commission." The case was continued for further hearing. No further hearings were held.

Although questionnaires were subsequently submitted by the Commission to the parties, the answers to same did not develop any voluntary assumption of costs by either the City of Arnold or the City of New Kensington, except for the removal of the War Memorial, the costs of which were assumed by the latter (R. 174a). Nevertheless, the Commission undertook to divide the total costs between the Pennsylvania Railroad and the two cities without taking testimony to determine the proper apportionment of same.

To make such an assessment against the appellant, which rightfully expected a further hearing in the matter, without any evidence upon which to base such apportionment and without affording appellant an opportunity to be heard on this important phase of the case seems to me to be a violation of due process.

I have no doubt that the action of the Solicitor and other officials of the City of Arnold constituted an appearance in the case in sufficient manner as to make it a party, especially since it filed a petition for a "rehearing" which indicates it considered itself a party. However, instead of a rehearing, I think it is entitled to have the original hearing completed in order that it may be heard on the matter of assessment of costs before such an assessment is made.

I would reverse the order of the Commission and remand the matter for further hearing or hearings.

WRIGHT, J., joins in this dissenting opinion.