Harrison *v.* Galilee Baptist Church, Appellant.

Argued January 18, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused November 3, 1967.

*Joseph A. McNeal,* for appellant.

*Harry R. Kozart,* for appellee.

OPINION BY MR. JUSTICE JONES, September 26, 1967:

This appeal challenges the efficacy as an estoppel of a declaration of no set-off to a mortgage given by the mortgagor to an assignee for value of the mortgage.

Galilee Baptist Church (Galilee), agreed in writing with Bernard Kanter (Kanter), to purchase a building located on Parrish Street, Philadelphia, which Galilee contemplated using for church purposes. According to this purchase-sell agreement, Galilee was to pay Kanter $35,000 of which $8,000 was to be paid in cash by the time of settlement and the balance of $27,000 was to be secured by a purchase money mortgage to be held by Kanter. Attached to and, by reference thereto, made a part of the agreement was an "addendum" under the terms of which Kanter agreed that, within 60 days of the settlement date, he would furnish the labor and materials necessary to make certain specified repairs and renovations to the building.

In order to satisfy certain liens against the property and clear the title thereto, Kanter approached an attorney, M. H. Weissman, for a $13,750 loan. Weissman agreed to secure $13,750 for Kanter provided that Kanter would assign to Weissman, or his nominee, the $27,000 purchase money mortgage to be executed by Galilee, this mortgage to be collateral security for the $13,750 loan. Weissman then had checks totalling $13,750 credited to Kanter's bank account, settlement under the Galilee-Kanter agreement was effected and title was taken in the name of Galilee, a mortgage and a bond for $27,500 was executed and delivered and Galilee then executed a declaration of no set-off. This declaration recited, inter alia, that Galilee, as owner of the property covered by the mortgage, had received notice of the assignment about to be made of the mortgage and bond by Kanter, the mortgagee, to Esther Harrison (Weissman's nominee), and that it then had "no charge, claim, demand, plea or set-off upon, for or

against" the mortgage and bond. The bond, mortgage, assignment and declaration were then forwarded to Weissman for Esther Harrison, the assignee.

*Thereafter,* Kanter failed to make the repairs and renovations which he had agreed to make under the provisions of the "addendum". Galilee had to engage someone else to make the repairs and renovations and, from the date of the mortgage—January 3, 1964—until June 2, 1964, Galilee did not pay either interest or principal on the mortgage.

Esther Harrison, assignee, then entered judgment on the mortgage bond and issued an execution against Galilee's property in the Court of Common Pleas No. 2 of Philadelphia County. On July 2, 1964, the court stayed a sheriff's sale of the property on such execution and granted a rule to show cause why the judgment should not be opened and Galilee let into a defense. After answer filed and depositions taken, the court below refused to open the judgment and from that order this appeal has been taken.

Initially, it must be noted that, when the declaration of no set-off was given, Galilee had, *in fact,* no claim against Kanter because Kanter was not *then* in default under the "addendum" and it was not until some time after Galilee had notice of the assignment and gave the declaration that it had any claim against Kanter. Moreover, the claim of Galilee against Kanter was and still is an unliquidated claim.

When Galilee gave the declaration of no set-off it (a) acknowledged receipt of notice of the assignment of the bond and mortgage to Esther Harrison and (b) admitted the validity of the mortgage debt of $27,000 and the absence of any defense to the payment of that obligation. Cf. Ladner, Real Estate Conveyancing, 2d ed. Vol. 1, p. 283.

Normally and ordinarily, one who takes an assignment of a bond and mortgage does so at his peril be-

cause he becomes subject to every defense then existing or that it might be subjected to in the hands of the assignor. However, that rule is not applicable where the mortgage debtor, who has notice of the assignment of the bond and mortgage, gives a declaration of no set-off to the assignee. See: *Much v. Gorsuch,* 307 Pa. 56, 61, 160 A. 774 (1932).

The claim which Galilee would interpose against this judgment arises from events which took place *after* it had had notice of the assignment and after it had given the declaration of no set-off. In *Snyder v. Southwestern Nat'l Bank,* 294 Pa. 1, 5, 6, 143 A. 206 (1928), we said: "There was notice to the bank of the intended assignment at the time it issued the obligations; after notice of an assignment of an instrument the party liable thereon cannot set off claims subsequently accruing against the assignor: [citing authorities]." In *Much v. Gorsuch,* supra, at page 61, we said: "It is inevitable that the defendant's claim existed or accrued either before or after he signed the declaration of no set-off. If it accrued before, his declaration would most certainly estop him from now asserting that he has such a claim, and if it accrued afterwards, it is clear from what has been stated above that it could not be used as a set-off."

The declaration of no set-off given by Galilee to Esther Harrison effectively estops Galilee from defending on the ground of its claim against Kanter, the assignor of the mortgage and bond. To hold otherwise under the instant circumstances would nullify completely the clear language of the declaration. See: *Fort Pitt Real Estate Co. v. Schaefer,* 96 Pa. Superior Ct. 497 (1929); *Quigley v. Breyer Corp.,* 362 Pa. 139, 142, 66 A. 2d 286 (1949); 51 A.L.R. 2d 886 et seq.

*Quigley,* supra, upon which Galilee places great reliance, is not presently apposite. In *Quigley,* the question was whether the assignee of the mortgage,

before or at the time of receipt of the declaration of no set-off, had notice that the mortgagor and mortgagee had agreed that the former could pay off the mortgage at any time before the due date. The court below in *Quigley* believed the testimony that the mortgagee-assignor had told the assignee's agent of the existence of the agreement and disbelieved the agent's testimony that he had received no such notice. This Court, on the record in *Quigley* found that notice had been given to the assignee's agent prior to the declaration of no set-off. In the case at bar, the record does not reveal notice given of any claim which Galilee had against Kanter, either by way of notice to Esther Harrison or Weissman, her attorney.

Furthermore, Kanter's undertakings under the provisions of the "addendum" were collateral to and not expressed in the mortgage and, ordinarily, an assignee would not take the mortgage subject to any equities or set-offs arising from such side agreements. See: *McCune v. Gross,* 377 Pa. 360, 364, 105 A. 2d 367 (1954); *Hickey v. Stern,* 351 Pa. 466, 468, 41 A. 2d 551 (1945).

Lastly, it is well settled that, in the absence of fraud, an unliquidated set-off is not ground for opening a judgment confessed under a warrant of attorney. See: *Harrison v. Stoeckert,* 369 Pa. 143, 146, 85 A. 2d 154 (1952); *McKee v. Verner,* 239 Pa. 69, 75, 76, 86 A. 646 (1913); *McRoberts v. Stadelman,* 168 Pa. Superior Ct. 489, 492, 493, 79 A. 2d 119 (1951). The claim of Galilee is clearly unliquidated.

We have inquired into and examined Galilee's other contentions and we find them without merit.

While we sympathize with the plight of Galilee, we can find no such abuse of discretion on the part of the court below in refusing to open this judgment as would justify a reversal of its action. On the contrary, the record reveals that Esther Harrison is an assignee for value of the bond and mortgage, that Galilee had

notice of such assignment and declared in writing that it had no set-off against the claim represented by the bond and mortgage and that Esther Harrison had no notice of any claim arising from any failure of Kanter to perform the terms of the "addendum". Under such circumstances, Galilee has no defense based upon a set-off to justify the opening of this judgment.

Order affirmed. Each party pay own costs.

Mr. Justice COHEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The Galilee Baptist Church in Philadelphia entered into a written agreement with Bernard L. Kanter to purchase from him an abandoned factory building which he was to renovate and more or less practically rebuild into a church edifice. The agreement specified that the total consideration would be $35,000; $2,000 to be down payment, $6,000 payment on execution of the formal agreement and the balance of $27,000 consideration to be evidenced by a purchase money mortgage.

Kanter negotiated with one Milton Weissman for a loan of $13,500, advancing the contemplated purchase money mortgage as collateral. Weissman informed Kanter by letter that he would make the requested loan if Kanter would convey the property to the Church and received in return the $27,000 mortgage which he would assign to "my client" as collateral.

The property was duly conveyed to the Church which paid the $8,000 due under the agreement and executed the $27,000 mortgage. The mortgage was assigned to "Esther Harrison." The Church at the settlement executed a declaration of no set-off. Kanter failed to abide by his commitments, the decrepit building remained in its dilapidated and unusable state, and the Church was compelled to contract elsewhere for the work abandoned by Kanter.

Because of the financial burdens heaped upon the church as the result of Kanter's defection, which compelled it to deal with others for performance of the work not accomplished by Kanter, the Church found itself unable to keep up payments due on the mortgage and, in consequence, the assignee took judgment on the mortgage bond, assessing damages in the amount of $27,000, plus interest and costs.

The Church petitioned the court of common pleas, Philadelphia County, to open the judgment and be let into a defense, averring that the consideration for the mortgage had failed since the contemplated and contracted-for but unaccomplished improvements were part and parcel of the mortgage transaction. The court held that the Church was estopped from asserting this defense on the basis that it had committed itself to a set-off, plus that Kanter's default had occurred after the assignment.

The fact that the Church agreed to a no set-off would not, in itself, act as a bar to those equities or defenses, of which the assignee had notice, or of which it had been put on inquiry. Milton Weissman, whether considered as the actual assignee, or as part assignee, or as agent of the assignee, admitted in his deposition that he saw the agreement (though not the addendum) entered into between the parties, and on which the mortgage had been given by the Church. Moreover, he saw this agreement before he entered into any transaction with Kanter. The agreement very clearly specifies that it covered the purchase of the building "with certain improvements and repairs enumerated in the addendum attached hereto and made part of this agreement." Thus, Weissman was aware that the consideration called for by the agreement, which was financed by the mortgage in question, was not based on the building alone but on the improvements and repairs as well. Weissman admitted he

saw the exterior of the building. This view alone would have put him on notice that the Church would not be paying $35,000 for an abandoned dilapidated factory building. In fact, Weissman conceded in his deposition that he knew Kanter had contracted to make improvements to the building. He said he did not know whether Kanter was to make all or only part of the improvements because he did not go into those details, stating that "as a lawyer and representing a client, and being interested myself, I was aware of the fact that a declaration of no set-off properly executed by the mortgagor would obviate any necessity for me knowing any facts about the interior. I was not concerned with what kind of repairs were to be made at that time at all . . . I assumed the purchaser . . . would protect his own interests."

But Mr. Weissman, and particularly because he is a lawyer, was aware or should have been aware that a declaration of no set-off does not exclude equities or defenses of which circumstances put him on inquiry; he had to know also that the mortgagor Church had the right to assume that, in view of the circumstances, Weissman would know of Kanter's obligations to remodel the building and he knew also that if Kanter failed to make the improvements contracted for, this would have a bearing on the Church's liabilities on the mortgage. Weissman could not insulate himself from the effect of events within the purview of his knowledge, simply by saying he "was not concerned." Weissman may not escape his responsibilities in the matter by refusing to open his eyes to what was clearly shown to him.

A somewhat similar situation arose in *Quigley v. Breyer*, 362 Pa. 139, where the original mortgagee had given the mortgagor by written agreement the right to pay off the mortgage prior to maturity. The mortgagee assigned the mortgage and bond to the Breyer

Company which, when the mortgagor offered to pay off the mortgage, refused tender of payment, relying on the mortgagor's execution of a declaration of no set-off. We held that the circumstances were suffi-cient to put Breyer on notice of the mortgagor's rights, stating:

"'. . . whatever fairly puts a person on inquiry is sufficient notice where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained': 39 Am. Jur. section 12, p. 238. See also Wilson v. McCullough, 23 Pa. 440, 446; Leonard's Appeal, 94 Pa. 168, 176; Patterson's Estate, 234 Pa. 128, 132, 82 A. 1130. *Since appellant was put on notice of appellees' right to pay off the mortgage, execution of the declaration of no set-off does not bar that right.* The purpose of a declaration of no set-off is to dispense with personal inquiry by a purchaser of the mortgage as to whether there is any equity or defense: Robertson v. Hay, 91 Pa. 242, 246. While the party giving a declaration of no set-off will ordinarily be estopped to assert any defense or equity against an assignee who purchases the mortgage on the faith of it, it is well settled that such declaration will not operate as an estoppel where the assignee had actual notice of the defense or equity, *or where, as here, the circumstances under which he became assignee were such as to put him on inquiry.* 'To avail himself of such an estoppel upon the debtor, the assignee who sets it up, must show that either he or some prior assignee from whom he claims, was an assignee for value, and without notice' . . ." (Emphasis supplied)

In the case at bar Weissman admitted that he knew Kanter was to make improvements. The fact that he did not bother to acquaint himself with the integral details and the terms of the agreement under which the improvements were to be made could not divest him of

his legal responsibility in the situation. As stated in *Bridgewater Borough v. Pa. P. U. C.*, 181 Pa. Superior Ct. 84, 98: "Information which could have been obtained in response to notice, which put this appellant on inquiry, charges it with the equivalent of knowledge of all phases of the contemplated structures. Quigley et al. v. Breyer Corp. et al., 362 Pa. 139, 66 A. 2d 286."

Weissman may not say that the declaration of no set-off bars the Church from asserting its right merely because he chose to ignore the rights of mortgagors under circumstances which raised questions he was duty-bound to resolve or, at the least, obligated to inquire into.

The Majority of this Court and the appellant rely on those cases dealing with collateral contracts creating no equity attaching to the mortgage itself. In the case at bar, however, the agreement as to the improvements became an integral part of the transaction which was financed by the mortgage; the agreement had to do with the purchase of the building together "with certain improvements and repairs enumerated in the addendum attached hereto and made part of this agreement." The mortgage clearly had to cover the improvements as well as the building itself.

The case of *Fort Pitt Real Estate v. Schaefer*, 96 Pa. Superior Ct. 497, cited in the Majority Opinion, supports rather than refutes the conclusion I have reached. In that case the court went to great pains to show that the knowledge of Schumaker—that the mortgagor would have a defense against the mortgagees in a suit on the mortgage if the latter did not complete the house—was not the knowledge of the assignee. Thus, the inference is obvious that if the knowledge could have been imputed to the assignee, the declaration of no set-off would not have been a bar.

Nor is this, as claimed by the assignee, a case of the mortgagor attempting to set up an unliquidated demand as a defense to a judgment. The mortgagor is setting up the defense of failure of consideration, which is a defense the assignee knew or should have known, by reason of the circumstances which put the assignee on notice and inquiry, could be asserted if the improvements contracted for, and for which the mortgage was given, were not made.

I might say, in concluding this dissent that it is curious that the amount required to repair the church equals almost the amount of the discount by which Mrs. Harrison obtained the mortgage.

I believe the court below erred in refusing to permit the judgment entered on the mortgage bond to be opened so that the mortgagor could enter into its defense.

Mr. Justice ROBERTS joins in this dissenting opinion.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Although I am in complete accord with Mr. Justice MUSMANNO'S dissenting opinion, I desire to underscore the very persuasive fact that Mrs. Harrison "purchased" a $27,000 mortgage for a mere $13,750. Since we are concerned here with whether Mrs. Harrison had actual knowledge of Kantor's agreement to repair, what better evidence is there of such knowledge than the "curious" near identity between her discount and the estimated cost of this repair, $15,000. There can be little doubt that Mrs. Harrison would not lend more money on a building than she knew it to be worth. Nor can there be any doubt that this Court ought not to give her a windfall of over $13,000.